UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN MUIR, on behalf of himself and all others similarly situated, | )<br>)<br>) 13 C 3570 |
| Plaintiff, | )<br>) Judge Feinerman |
| vs. | )<br>) |
| PLAYTEX PRODUCTS, LLC, and PLAYTEX PRODUCTS, INC., | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In this putative class action, Kevin Muir alleges that Playtex Products, LLC, and Playtex Products, Inc. (together, "Playtex"), sold him a diaper disposal product, the Diaper Genie II Elite, that falsely claimed on its packaging that it had been "Proven #1 in Odor Control." Doc. 1. The complaint advances a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, and submits that Muir suffered an economic injury as a result of Playtex's deception. Playtex has moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and, alternatively, under Rule 12(b)(6) for failure to state a claim. Doc. 20. The motion is denied.

**Background**

In considering Playtex's motion, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Muir's brief opposing dismissal, so long as those

facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). To the extent an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). The following facts are set forth as favorably to Muir as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

In 2008, Playtex launched the Diaper Genie II Elite, a diaper disposal system that uses a proprietary film lining. Doc. 1 at ¶¶ 13-14, 17. Until January 2011, the front of each Diaper Genie II Elite package displayed a large gold banner stating "Proven #1 in Odor Control*" in large lettering. *Id*. at ¶ 16. According to the complaint, the asterisk referenced a disclaimer on the "back" of the package, which stated in fine print: "*proven #1 in odor control when tested against other major competitors that use ordinary garbage bags and/or carbon refills under the most rigorous conditions of emptying the pail." *Id*. at ¶ 1 n.1. The complaint alleges that this is the "front shot" of the package:



*Id*. at ¶ 16. Playtex's motion to dismiss argues that "the photograph of the box that Plaintiff includes in his Complaint misleadingly crops off the bottom section of the *front* panel," and

attaches what it calls "a complete photo" of the front panel, which has the disclaimer at the bottom:



Doc. 22 at 13; Doc. 22-1. Muir's opposition brief responds that the photograph attached to Playtex's motion "is not a picture of the packaging on store shelves, but a picture used in an advertisement." Doc. 26 at 10 n.6.

The court may consider "documents attached to a motion to dismiss … [as] part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)) (alterations omitted). Although the front of the Diaper Genie II Elite package is referred to in Muir's complaint and central to his claim, the court declines at this point to accept Playtex's submission that the photograph attached to its motion accurately represents the front of the package. On a Rule 12(b)(6) motion, the court must accept the plaintiff's factual allegations and draw all reasonable inferences in the plaintiff's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Accordingly, for

purposes of this motion, the court will accept as true Muir's allegation that the disclaimer appears on the back, not the front, of the Diaper Genie II Elite package.*

Several tests have concluded that the Diaper Genie II Elite is not superior to diaper disposal systems that, like the Diaper Genie II Elite, utilize proprietary film bags, as opposed to diaper disposal systems that use ordinary garbage bags or carbon refills. Doc. 1 at ¶¶ 17-19. In the sole test that Playtex conducted against another diaper disposal system using a proprietary film bag, the Diaper Dékor, the Diaper Genie II Elite underperformed in odor control. *Id*. at ¶ 17. And in 2010, Munchkin, Inc.—the manufacturer of the Arm & Hammer Diaper Pail, which also uses a proprietary film—retained an independent laboratory to test the odor control of competitor diaper pails, including the Diaper Genie II Elite. *Id*. at ¶ 19. The test concluded that the Arm & Hammer Diaper Pail controlled odor better than the Diaper Genie II Elite. *Ibid*. In November 2010, the National Advertising Division of the Better Business Bureau recommended that Playtex discontinue its "Proven #1 in Odor Control" claim because it "convey[s] a broad claim of comparative superior product efficacy" without scientific evidence establishing its truth. *Id*. at ¶ 18. Playtex stopped using the "Proven #1" claim after Munchkin filed suit against Playtex for false labeling in January 2011. *Id*. at ¶ 15.

In or around July 2010, Muir purchased a Diaper Genie II Elite for approximately $35 at a store in McHenry, Illinois. *Id*. at ¶ 9. "After reading the Product label, including Playtex's 'Proven #1' claim, [Muir] purchased the Diaper Genie II Elite in reliance on the 'Proven #1'

---

* While opposing litigants often disagree about key facts, it is surprising that Muir and Playtex would disagree about factual matters—whether the disclaimer appeared on the front or the back of the Diaper Genie II Elite package, and whether the photograph in Playtex's motion was taken from the package or lifted from an advertisement—that do not turn on, say, conflicting memories, but rather are almost certain to be objectively and indisputably ascertained. The party that is proven wrong on these two matters is likely to emerge with damaged credibility. It would be far better for that party (and its lawyers) to confess error quickly than to put its opponent to the time and expense of fighting an unnecessary battle.

claim' believing that the Diaper Genie II Elite was the superior odor control product on the market." *Ibid*. "Had [Muir] known the truth about Playtex's misrepresentations and omissions, he would not have paid for the Diaper Genie II Elite. As a result, [Muir] suffered injury in fact and lost money." *Ibid*.

Muir claims that Playtex violated the ICFA by having "misrepresented and deceptively concealed, suppressed and/or omitted the material information known to [Playtex] as set forth above concerning the Diaper Genie II Elite." *Id*. at ¶ 40. These "deceptive acts," Muir alleges, "proximately caused [him] actual injury and damage." *Id*. at ¶ 42.

## Discussion

Playtex has moved to dismiss under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. Each ground will be considered in turn.

**I.    Rule 12(b)(1): Whether Muir Has Standing**

To establish Article III standing, a plaintiff must allege injury-in-fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Muir's alleged injury is financial; he claims that if he had known that the "Proven #1 in Odor Control" claim was false, he would not have purchased the Diaper Genie II Elite and certainly would not have paid a premium price for the product. Doc. 1 at ¶ 9 ("Had [Muir] known the truth about Playtex's misrepresentations and omissions, he would not have paid for the Diaper Genie II Elite."); Doc. 26 at 4-5 ("Had [Muir] known the truth about [Playtex's] misrepresentation and omissions, he would not have purchased, let alone paid a premium for[,] the Product."). Under the principles set forth in *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011), these allegations are sufficient to establish standing.

The plaintiffs in *Aqua Dots* sued the manufacturer and distributors of a children's toy consisting of beads containing a chemical that, when swallowed, could cause severe illness and even death. *Id*. at 749. The plaintiffs were not physically injured children or their parents, but instead were the parents of children who had suffered no physical injury. *Id*. at 750. The Seventh Circuit held that the plaintiffs had Article III standing, explaining: "[The fact] that members of the class did not suffer physical injury … does not mean that they were uninjured. The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing." *Id*. at 751.

The same result obtains here. As just noted, Muir alleges that if he had known that Playtex's "Proven #1" claim was false, he would not have purchased the Diaper Genie II Elite and certainly would not have paid a premium price. That is, Muir alleges that Playtex's product was worth less than what he paid because the product was not, in fact, better than its competitors at odor control. That is sufficient to establish standing under *Aqua Dots*. *See also Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849-50 (7th Cir. 2000) (holding that plaintiffs seeking to invalidate a state statute had standing where they alleged that the statute resulted in their paying a premium price for a certain wine, and noting that "this difference in price is [a] source of injury"); *Lipton v. Chattem, Inc.*, 2012 WL 1192083, at *3-4 (N.D. Ill. Apr. 10, 2012) (same where the plaintiff alleged that the weight loss drug she bought was worth less than what she paid because it contained a dangerous ingredient and that she would not have purchased the product had she known that the drug contained that ingredient); *Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1084 (N.D. Ill. 2011) (same where the plaintiff alleged that she paid a premium price for a food product based on the defendant manufacturer's false representations that the product did not contain unhealthy trans fats, and noting that this "price differential represents a

concrete injury-in-fact"); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124-25 (N.D. Cal. 2010) (same); *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1240-41 (D. Kan. 2007) (same where the plaintiff alleged that she paid more for beverages than they were worth because they possibly contained a dangerous chemical); *Cent. Laborers' Pension Fund v. SIRVA, Inc.*, 2006 WL 2787520, at *3 (N.D. Ill. Sept. 22, 2006) (same where the plaintiff alleged that he "purchased SIRVA stock at an inflated price because of the misstatements in the offering documents").

In urging the contrary result, Playtex argues that Muir cannot establish injury-in-fact because "he fails to allege any facts whatsoever about how his Elite *actually performed*" and "never identifies what less expensive product (if any) he would have purchased absent Playtex's purported misrepresentations about the Elite." Doc. 22 at 10-11. These arguments cannot be reconciled with *Aqua Dots*. The *Aqua Dots* plaintiffs did not have to allege that the toys failed to meet their expectations to establish standing, and nor did they have to identify which alternative product they would have purchased. Rather, the Seventh Circuit held that the plaintiffs' alleged financial injury was incurred, and their standing established, at the time of purchase given their allegation that "they paid more for the toys than they would have … had they known of the risks the beads posed to children." *Aqua Dots*, 654 F.3d at 751; *see also Chacanaca*, 752 F. Supp. 2d at 1125 (based on the plaintiffs' allegation that "[h]ad they known about the trans fat content [in the defendant's oatmeal], … they would not have purchased the product," holding that the plaintiffs had standing given that the "injury alleged here is the *purchase* of food products that contain an ingredient the plaintiffs find objectionable"). Likewise, Muir's standing was established at the time of purchase, regardless of whether he later was dissatisfied with the Diaper Genie II Elite and regardless of whether he would have purchased a substitute product.

**II.     Rule 12(b)(6): Whether the Complaint States an ICFA Claim**

To state an ICFA claim, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. 2009). Playtex argues that Muir has failed to adequately allege deceptive conduct, actual damage, and proximate cause.

**A.     Deceptive Conduct**

Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005); *see also Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8 (Ill. App. 1997). As the Seventh Circuit has directed, "in determining whether the allegations in [the] complaint state [an ICFA] claim for relief that satisfies the requirements of Rule 12(b)(6)," the court must "ask whether the allegedly false and misleading statements on which [the plaintiff] base[s] his [ICFA] claim can be read to create a likelihood of deception or to have the capacity to deceive." *Bober*, 246 F.3d at 938. Playtex offers two grounds to support its submission that the "Proven #1 in Odor Control" claim is, as a matter of law, not deceptive. Both fail to persuade.

Playtex first argues that the "Proven #1" claim is not deceptive because, even though the Diaper Genie II Elite was not tested against or proven superior to diaper disposal products using a proprietary film lining, the product's package disclosed, in the text following the asterisk, that

the claim was limited to "test[s] against other major competitors that use ordinary garbage bags and/or carbon refills under the most rigorous conditions of emptying the pail." Doc. 22 at 12. The legal principle underlying Playtex's argument is correct: an allegedly deceptive statement must be considered in light of the total mix of information provided to the consumer, meaning that a statement that would have been deceptive in isolation can be non-deceptive when placed in context. *See Davis*, 396 F.3d at 884 (holding that there was no deceptive act where the plaintiffs were alerted "in a number of ways[] to the fact that they were agreeing to a five-year penalty period," including in an addendum signed by the plaintiffs "contain[ing] a disclaimer in bold at the top, warning the [plaintiffs]: 'Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.'"); *Tudor*, 681 N.E.2d at 8 (holding that the plaintiff failed to plead that the defendant acted deceptively by charging her a higher price via the store's electronic scanner than the price indicated on the shelf, reasoning that "[t]he combination of the high accuracy rate of the scanners, along with the issuance of a receipt and defendant's policy of providing a money-back guarantee if the scanned price differs from the shelf price, indicates there was no deception by defendant"); *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. 1996) (rejecting the claim that "the Bank's conduct was deceptive because the agreement did not define the term 'overdraft'[,] the listing of the overdraft charge was buried in several documents[,] and the agreement did not clearly disclose that the $20 charge would be assessed separately," because "the Bank eliminated any confusion concerning overdraft charges by providing [the plaintiff] with pamphlets which expressly stated that it would charge $20 per day for overdrafts"). But that principle does not win the day for Playtex, at least on a Rule 12(b)(6) motion, because Playtex's (alleged) placement of the disclaimer on the back of the

package in "much smaller, barely legible type," Doc. 26 at 10, could have had the capacity to deceive consumers, who—drawing a reasonable inference in Muir's favor—were likely to focus their attention on the front of the package and its prominently featured "Proven #1" claim, and because Playtex made no other efforts to inform consumers that the Diaper Genie II Elite had not been proven superior to diaper disposal products with proprietary film linings. *See Garcia v. Overland Bond & Inv. Co.*, 668 N.E.2d 199, 202, 204 (Ill. App. 1996) (holding that the plaintiffs sufficiently alleged that a used car dealership engaged in a deceptive act by falsely stating "in large, bold print" on advertisements that it offered "easy credit," reasoning that "even assuming that the disclaimer [in "very small print" requiring "o.k. credit"] appears at the bottom of all of the defendant's print advertisements, we do not think that, as a matter of law, it negates the net impression the advertisements make on the general populace, which the plaintiffs allege is that the defendant offers easy, lenient credit terms at low bank interest rates"); *Pearson v. Target Corp.*, 2012 WL 7761986, at *2 (N.D. Ill. Nov. 9, 2012) (same where the label of a vitamin supplement stated that the supplement "help[s] rebuild cartilage" even though clinical studies proved otherwise, reasoning that the label's disclaimer that the product was "not intended to diagnose, treat, cure, or prevent any disease" was "ineffective").

Playtex next argues that it did not commit a deceptive act because the "Proven #1 in Odor Control" statement is "nothing more than puffery." Doc. 22 at 14. "Puffing denotes the exaggerations reasonably expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007). Puffing typically consists of "subjective descriptions relating to quality," *Avery*, 835 N.E.2d at 846, such as "high quality," "perfect," and "best," *Barbara's Sales, Inc.*, 879 N.E.2d at 926 (citing cases). In *Barbara's Sales*, for example, the Supreme

10

Court of Illinois held that the phrase "4 is better than 3"—which Dell used in advertisements for its new Pentium 4 processors, and which referred to the Pentium 4 processor and its predecessor, the Pentium 3—was puffery. *Id*. at 927. The court reasoned that "4 is better than 3" was "so vague as to leave the standards for interpretation open to a number of plausible criteria for judgment," and that "[a] reasonable consumer would not rely on it because there is nothing specific or explicit about the name 'Pentium 4' … that can be said to have a specific attribute other than the actual processor itself." *Ibid*. Because it is unclear whether "better" meant "cheaper, smaller, more reliable, of higher quality, better for resale, [or] more durable," the court held that the term was "not capable of precise measuring" and was therefore non-actionable puffery. *Ibid*.

Playtex's "Proven #1 in Odor Control" claim is different. The claim leaves no doubt as to the criterion—odor control—upon which to judge the Diaper Genie II Elite. And superiority in odor control is "capable of precise measuring," as underscored by Playtex's use of the word "proven" and the existence of scientific studies conducted by Playtex and Munchkin. A reasonable consumer could certainly rely on the "Proven #1" claim in concluding that Playtex's product had been proven superior to its competitors and therefore in deciding whether to purchase the product. Accordingly, the "Proven #1" claim is not mere puffery. *See People ex rel. Peters v. Murphy-Knight*, 618 N.E.2d 459, 464-65 (Ill. App. 1993) (holding that the defendant's claim that it would install thermal banks "as called for in the specifications" was not puffery because the claim is "specific and of an objective, quantifiable, and verifiable nature," and "constitutes a representation of fact that the [thermal banks] are capable of reaching capacity in 12 hours as the specifications required"); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 540-41 (D.N.J. 2011) (holding that the defendant's claim that its baby

11

lotion was "clinically proven" to help babies sleep better was not puffery because it "did not just make vague or highly subjective claims of simple superiority that could be considered puffery," but instead "appears both specific and measurable") (internal quotation marks omitted); *UOP v. Andersen Consulting*, 1997 WL 219820, at *4 (Conn. Super. Ct. Apr. 24, 1997) (holding that the defendant's statement that "Andersen Consulting has consistently proven its ability to manage the installation of large, complex systems like CASA" was not puffery).

### B. Actual Damages

The actual damages element of an ICFA claim is distinct from the Article III injury-in-fact requirement, so it is necessary to determine whether the complaint adequately pleads actual damages even though the court already has held that Muir had adequately pleaded Article III standing. *See Rifkin v. Bear Stearns & Co.*, 248 F.3d 628, 631-32 (7th Cir. 2001); *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007); *Gonzalez*, 489 F. Supp. 2d at 1240 n.7. To satisfy the actual damages element, a plaintiff must allege "actual pecuniary loss." *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Avery*, 835 N.E.2d at 859-50. Where, as here, a consumer brings a private ICFA action, "actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the [product].'" *Kim*, 598 F.3d at 365 (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197-98 (Ill. App. 2008)).

"Illinois courts have generally allowed damages claims based on diminished value of a product regardless of whether it has yet malfunctioned, provided the product contains a manifested defect or current condition affecting value." *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 10 (Ill. App. 2001); *see also Dewan v. Ford Motor Co.*, 842 N.E.2d 756, 760-63 (Ill. App. 2005) (citing cases for the proposition that "[t]he diminished value of a product due to

defects associated with the product is a compensable injury in [a] consumer fraud … action," and holding that the plaintiff sufficiently pleaded actual damages where the "complaint alleged that the defect caused the car to be worth less than the plaintiff paid for it and, had the plaintiff known of the defective sensors, he would not have purchased the vehicle or would have paid substantially less for it"). Contrary to Playtex's contention, to properly plead actual damages, an ICFA plaintiff need not allege that the product's performance was deficient. *See Schiffner v. Motorola, Inc.*, 697 N.E.2d 868, 874-76 (Ill. App. 1998) (noting that Illinois allows "claims for diminished value of an allegedly defective product without the pleading of any damage to the product or person," and holding that cell phone users pleaded actual damages where they alleged that the incomplete disclosure of potential health risks diminished the value of their phones).

Muir alleges that he was deprived of the benefit of the bargain because the Diaper Genie II Elite product was actually worth less than what it would have been worth had it actually been proven superior in odor control to its competitors. That is sufficient to plead actual damages under the ICFA. *See Dewan*, 842 N.E.2d at 760-63 (holding that actual damages were properly alleged where the plaintiffs sued to recover for the diminished value of a car); *Miller*, 762 N.E.2d at 10-11 (same); *Schiffner*, 697 N.E.2d at 874-76 (same for cell phones); *Wiegel v. Stork Craft Mfg., Inc.*, 780 F. Supp. 2d 691, 694 (N.D. Ill. 2011) (same for a defective crib).

### C. Proximate Cause

Finally, Playtex argues that Muir has not adequately alleged that its allegedly deceptive conduct proximately caused his damages. Doc. 22 at 16. Under the ICFA, "deceptive advertising cannot be the proximate cause of damages … unless it actually deceives the plaintiff." *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004); *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). That said, it suffices at the pleading stage to

13

allege that the plaintiff incurred a financial injury upon purchasing a product based on the defendant's deceptive statements. *See Connick*, 675 N.E.2d at 594-95 (noting that "plaintiffs can state a valid claim of consumer fraud only where premised upon statement made prior to their dates of purchase," and holding that the plaintiffs adequately pleaded proximate cause by alleging "that their purchases occurred after the allegedly fraudulent statements"); *Brown v. SBC Commc'ns, Inc.*, 2007 WL 684133, at *5 (S.D. Ill. Mar. 1, 2007) ("At the pleading stage, however, all that is necessary to allege proximate causation is to assert, as [the plaintiff] does, that after the alleged misrepresentations were made, the wrongful charges were paid."). By claiming that "he personally saw the misrepresentations [on the Diaper Genie II Elite package], was deceived by them, and was financially damaged as a result," Muir has adequately pleaded proximate cause. Doc. 26 at 15; *see* Doc. 1 at ¶ 9.

## Conclusion

For the foregoing reasons, Playtex's motion to dismiss is denied. Playtex shall answer the complaint by November 20, 2013.

November 6, 2013

_____
United States District Judge

14